### STATE OF CONNECTICUT *v.* BRUNO TETI
### (AC 17090)

O'Connell, C. J., and Foti and Kulawiz, Js.

Argued June 8—officially released August 25, 1998

*Kenneth J. Bartschi,* with whom were *Wesley W. Horton* and, on the brief, *Robert M. Shields, Jr.,* and *James M. Marinelli,* for the appellant (defendant).

*Lisa Herskowitz,* assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Paul Rotiroti,* deputy assistant state's attorney, for the appellee (state).

*Opinion*

KULAWIZ, J. The defendant, Bruno Teti, appeals from the judgment of conviction, rendered after a jury trial, of operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of General

Statutes § 14-227a (a) (2).[1] On appeal, the defendant claims that (1) there was insufficient evidence to support the conviction, (2) the trial court improperly communicated ex parte with the jury and (3) the trial court inadequately instructed the jury. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On December 20, 1995, sometime between 1 a.m. and 1:30 a.m., Walter Darden of New Britain awoke to the sound of spinning tires. Darden looked out of his window and saw someone inside a vehicle trying to remove it from a snowbank. Darden could not identify the person inside the vehicle and he called the police. Five or ten minutes later, Darden looked out his window again and saw someone standing by the driver's door of the vehicle. No one else was in the area.

Officer Stephen King of the New Britain police department was the first officer to arrive. King did not see anyone in or near the vehicle. King, however, did see footprints that went from the driver's door to the back of the vehicle and then away from the vehicle. King saw no footprints other than those and his own.

King went to speak with Darden. While King was gone, Officer Eric Peck of the New Britain police department arrived. The defendant arrived next.

Peck asked the defendant if he knew what had happened. The defendant initially did not respond and then stated that he was with some friends, one of whom had driven the vehicle. The defendant refused, however,

---

[1] General Statutes § 14-227a (a) provides in relevant part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if he operates a motor vehicle on a public highway of this state . . . (2) while the ratio of alcohol in the blood of such person is ten-hundredths of one per cent or more of alcohol, by weight."

to identify his friends. The defendant denied drinking alcohol that night and admitted that the vehicle was his. Peck saw "crisp" footprints that matched those of the defendant.

While speaking with the defendant, the officers noticed that the defendant was staggering and slurring his speech. The officers then administered field sobriety tests to the defendant at the scene, which he failed. The officers arrested him and transported him to police headquarters, where he was administered two tests showing blood alcohol levels of 0.169 percent and 0.149 percent, both well above the legal limit.

I

The defendant first claims that there was insufficient evidence to support his conviction. Specifically, the defendant contends that the state failed to present evidence from which a jury could conclude beyond a reasonable doubt that the defendant operated a motor vehicle while under the influence of liquor or drugs. We disagree.

The defendant and a witness, Tina Espinosa, a neighbor of the defendant, testified at trial to a different version of the events. The defendant presented evidence that at about 1 a.m. on December 20, 1995, Espinosa's daughter became ill and needed medicine. Espinosa asked the defendant if she could borrow his car to go to a store. The defendant consented and Espinosa left with the car. When Espinosa was on her way home, the vehicle slid into a snowbank. Espinosa unsuccessfully tried to remove the vehicle from the snowbank.

Espinosa walked to the defendant's house to tell him what happened. The defendant told her not to worry about it, and Espinosa went home to bed. The defendant went to investigate the vehicle. It took the defendant

about thirty seconds to get from his house to the accident scene. Upon arriving, the defendant found that the vehicle was locked, and he went around the back of the vehicle to a parking lot to ask a snowplow driver for help. The snowplow driver agreed to help, and the defendant walked back to the accident scene, assuming that the snowplow driver would follow. The officers then interviewed the defendant, administered sobriety tests to him and arrested him. The defendant claims that because the evidence does not preclude the reasonable hypothesis that the only person operating the vehicle was Espinosa, the evidence was insufficient to support a conviction.

"When reviewing sufficiency of the evidence claims, we impose a two part analysis. First, we construe the evidence in the light most favorable to sustaining the verdict. . . . Second, we determine whether, from that evidence and all reasonable inferences that it yields, a trier of fact could reasonably have concluded that the defendant was guilty beyond a reasonable doubt." (Citations omitted.) *State* v. *Scales*, 38 Conn. App. 225, 228, 660 A.2d 860 (1995).

The defendant was charged with operating a motor vehicle while under the influence of liquor or drugs. A person operates a motor vehicle within the meaning of § 14-227a (a) (2) "when in the vehicle he intentionally does any act or makes use of any mechanical or electrical agency which alone or in sequence will set in motion the motive power of the vehicle." *State* v. *Ducatt*, 22 Conn. App. 88, 90–91, 575 A.2d 708, cert. denied, 217 Conn. 804, 584 A.2d 472 (1990).

The state was required to prove beyond a reasonable doubt that the defendant operated a motor vehicle while under the influence of liquor or drugs. The defendant did not dispute that his blood alcohol content exceeded

the legal limit or that Whiting Street is a public highway as that term is used in § 14-227a (a) (2). The defendant merely claims that the state's evidence was insufficient to prove beyond a reasonable doubt that he was the person who drove into and tried to remove the vehicle from the snowbank.

The state could not proffer any direct evidence proving that the defendant was the operator of the vehicle. Because operating the vehicle is an essential element of the crime, that element must be proven beyond a reasonable doubt. *State* v. *Harris*, 227 Conn. 751, 757, 631 A.2d 309 (1993). However, "[w]hile the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Adams*, 225 Conn. 270, 276–77, 623 A.2d 42 (1993).

The state's case was based on circumstantial evidence. "There is no distinction between direct and circumstantial evidence as far as probative force is concerned . . . ." (Internal quotation marks omitted.) *State* v. *Heinz*, 193 Conn. 612, 625, 480 A.2d 452 (1984). In fact, "circumstantial evidence may be more certain, satisfying and persuasive than direct evidence." (Internal quotation marks omitted.) *State* v. *Scales*, supra, 38 Conn. App. 229. In a case involving circumstantial evidence, we must examine "the cumulative impact of a multitude of factors in order to determine whether the identification of the defendant has been satisfactorily established by the circumstantial evidence." Id.; *State* v. *Salz*, 226 Conn. 20, 38, 627 A.2d 862 (1993). "If evidence, whether direct or circumstantial, should convince a jury beyond a reasonable doubt that an accused is guilty, that is all that is required for a conviction." *State* v. *Smith*, 138 Conn. 196, 200, 82 A.2d 816 (1951).

In the present case, the circumstantial evidence, when viewed in the light most favorable to sustaining the verdict, was sufficient for a jury to find that the defendant was the operator of the vehicle. First, Peck testified that there was only one set of footprints coming from the vehicle and that the footprints matched the defendant's. Moreover, the only footprints in the area were those of the defendant and the police officers. Therefore, the jury reasonably could have concluded that the defendant operated the vehicle and reasonably could have rejected the defendant's claim that either a snowplow destroyed Espinosa's footprints or snow covered them. Footprints, together with other circumstantial evidence of guilt, are sufficient to sustain a conviction. See *State* v. *Scales*, supra, 38 Conn. App. 229–30.

Second, both times within a ten minute period when Darden looked out his window, he saw someone standing by the vehicle. The defendant conceded that he was the person whom Darden saw the second time. The jury reasonably could have found that the defendant did not have time between sightings to go home and return to the accident scene. Therefore, the jury reasonably could have concluded that Darden saw the defendant each time that he looked out of his window.

Third, there was evidence of the defendant's consciousness of guilt. A jury can properly draw an inference from consciousness of guilt evidence. *State* v. *Sivri*, 231 Conn. 115, 130, 646 A.2d 169 (1994). In this case, evidence of guilt consisted of the defendant's (1) ignoring Peck's initial question of what happened, (2) claiming that he had been riding in the vehicle with his friends and (3) denying to the officers that he had been drinking. From that evidence, the jury reasonably could have concluded that the defendant was trying to hide from the officers that he had operated a motor vehicle while intoxicated.

The defendant argues that his conviction must be reversed because the evidence does not preclude the reasonable hypothesis that the only person operating the vehicle was Espinosa. We disagree.

Our Supreme Court has rejected similar claims. In *State* v. *Sivri*, supra, 231 Conn. 115, the defendant argued that his conviction of murder must be reversed because the evidence did not preclude the reasonable hypothesis that he killed the victim with less than an intentional state of mind. The defendant in that case relied on *State* v. *Carpenter*, 214 Conn. 77, 570 A.2d 203 (1990), on appeal after remand, 220 Conn. 169, 595 A.2d 881 (1991), cert. denied, 502 U.S. 1034, 112 S. Ct. 877, 116 L. Ed. 2d 781 (1992), as his authority. The *Carpenter* court stated that "[a] conclusion of guilt requires proof beyond a reasonable doubt, and proof to that extent is proof which precludes every reasonable hypothesis except that which it tends to support, and is consistent with the defendant's guilt and inconsistent with any other rational conclusion." (Internal quotation marks omitted.) Id., 84. The *Sivri* court, however, rejected the defendant's use of *Carpenter* and held that the defendant's "argument is based upon a fundamental misconception of the relationship between the principles articulated in *Carpenter* and our well established and traditional scope of review of jury verdicts." *State* v. *Sivri*, supra, 132.

Similarly, in the present case, the defendant bases his argument on a fundamental misunderstanding of the traditional scope of review of jury verdicts. The jury's role as trier of fact is to draw reasonable and logical inferences from the facts as it finds them to exist. *State* v. *Gray*, 221 Conn. 713, 721, 607 A.2d 391, cert. denied, 506 U.S. 872, 113 S. Ct. 207, 121 L. Ed. 2d 148 (1992). "[I]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not

required to draw only those inferences consistent with innocence." (Internal quotation marks omitted.) *State v. Sivri*, supra, 231 Conn. 132.

The defendant's reasonable hypothesis argument is directly contrary to our traditional scope of review of jury verdicts. In the present case, the defendant has presented a theory by which the jury could have acquitted him. The jury heard testimony from the defendant and Espinosa that Espinosa had been the operator of the vehicle. The jury, however, chose not to believe this testimony. The jury is the sole judge of the credibility of witnesses. *SFP Tisca v. Robin Hill Farm, Inc.*, 244 Conn 721, 731, 711 A.2d 1175 (1998). Therefore, even though the defendant could describe to the jury a situation that could support a reasonable hypothesis of innocence, the jury reasonably interpreted the evidence to support a verdict of guilty. "On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." *Sivri*, supra, 231 Conn. 134.

## II

The defendant's second issue on appeal is whether the trial judge improperly communicated ex parte with the jury. The defendant claims that the trial judge's written ex parte response to the jury's question was improper and presumptively prejudicial. We disagree.

Additional facts are necessary to our resolution of this claim. During deliberations, the jury made a written request to the trial court to review a police report that was not admitted into evidence. The court called counsel into chambers and discussed the jury's request with them. Instead of bringing the jury into open court to answer the question, however, the court wrote directly on the jury's note that "[y]ou may not review the police

report. It was not offered into evidence by either party. There are endless reasons as to why certain documents are not offered as exhibits, and you should not speculate as to why this document wasn't. You may rightfully consider any references that were made to the report during trial." The court clerk marked the note from the jury and the judge's response as a court exhibit.

Later that day, the court read on the record its response to the jury's question. The defendant did not object and the jury was excused for the day. At the sentencing hearing six weeks later, the defendant moved for a new trial because the court improperly communicated ex parte with the jury. The court denied the defendant's motion, ruling that even if it had committed error, the error was harmless.

Practice Book § 42-7, formerly § 845, provides that "[a]ll communications from the jury to the judicial authority shall be in writing. The judicial authority shall require that a record be kept of all communications received by it from a juror or the jury after the jury have been sworn, and it shall not communicate with a juror or the jury on any aspect of the case itself, as distinguished from matters relating to physical comforts and the like, except after notice to all parties and reasonable opportunity for them to be present." In a criminal trial, ex parte conversations between the judge and jury are constitutionally prohibited. *State* v. *McCall*, 187 Conn. 73, 81–82, 444 A.2d 896 (1982). " 'Even when communication occurs between the judge and a juror after deliberations have begun, however, prejudice must be found to warrant a mistrial. . . . In a criminal case the burden is on the state to show that the communication was harmless beyond a reasonable doubt.' " (Citation omitted.) *State* v. *Wooten*, 227 Conn. 677, 706, 631 A.2d 271 (1993).

We conclude from our review of the record that the state demonstrated that the trial court's actions were

harmless beyond a reasonable doubt. The absence of prejudice "was shown in this case by the full and immediate disclosure in open court of what had transpired . . . ." (Internal quotation marks omitted.) *State* v. *McCall*, supra, 187 Conn. 82. The record indicates that when the jury sent the note requesting to see the police report, the court discussed the request with counsel in chambers. The court, later that day, read on the record its response to the jury's question. The defendant did not object to the court's actions until the sentencing hearing. Because the court's response was made a court exhibit and because the court read its response on the record, the defendant knew exactly what the court wrote to the jury. The defendant does not object to the content of the court's response to the jury's question. Therefore, even if the court's actions were improper, they did not prejudice the defendant.

III

The defendant's final issue on appeal is whether the trial court inadequately instructed the jury. Specifically, the defendant claims that the trial court gave the jury a defective curative instruction that left the jury with the impression that the court "sided with the state [regarding] a significant piece of evidence." We disagree.

Additional facts are necessary to our resolution of this claim. During its closing argument, the state mentioned that Darden had testified that the snow was lessening when the accident occurred. The defendant objected, arguing that the state mischaracterized the evidence. The state, in response, withdrew the statement.

Before the court charged the jury, the defendant argued to the court that unless the court played back Darden's testimony to the jury, the court would be preventing the defendant from receiving a fair trial. The

court disagreed and instead, during its jury charge, read a curative instruction regarding the objection.[2] Moreover, throughout its charge, the court reminded the jury that its recollection of the evidence was controlling.

Following the charge, the defendant claimed that his right to a fair trial had been violated. The court disagreed. "In reviewing a challenge to jury instructions, we must examine the charge in its entirety." *Felsted* v. *Kimberly Auto Services, Inc.*, 25 Conn. App. 665, 668, 596 A.2d 14, cert. denied, 220 Conn. 922, 597 A.2d 342 (1991). "[C]ommenting on evidence rests within the discretion of the trial court and impropriety will be found only where that discretion has been abused." *Geren* v. *Board of Education*, 36 Conn. App. 282, 287, 650 A.2d 616 (1994), cert. denied, 232 Conn. 907, 653 A.2d 194 (1995). The trial court's comments must be reasonable, and the court must not misstate facts or evidence. Id., 287–88.

" 'The jury are presumed to follow the court's directions in the absence of a clear indication to the contrary.' " *State* v. *Negron*, 221 Conn. 315, 331, 603 A.2d 1138 (1992). "[C]urative instructions are entitled to great weight and ordinarily prevent an appellate court from finding that the trial court committed reversible error." (Internal quotation marks omitted.) *State* v. *Youdin*, 38 Conn. App. 85, 94, 659 A.2d 728, cert. denied, 234 Conn. 920, 661 A.2d 100 (1995).

---

[2] The court read the following curative instruction: "I'd like first to bring up one issue. If you recall, prior to the recess, during the final argument . . . for the state . . . counsel for the defense objected to the characterization of the testimony of Mr. Darden as to whether or not the snow had begun to stop. The court overruled the objection and indicated that my recollection was the same. The court may have been mistaken in this recollection, as could either counsel have been. You are, therefore, advised to disregard any statement made by the court on those facts and to rely completely and solely on your own recollection. In addition, Mr. Darden's testimony, regarding this issue, as with any testimony that has been given in this case, may be played back to the jury upon your request when you are making your deliberations."

Our review of the record reveals that the trial court did not abuse its discretion. The trial court properly instructed the jury that even if the court's recollection of the evidence was incorrect, the jury's recollection of the evidence was controlling and that the jury should disregard any of the court's comments regarding that evidence. The defendant failed to provide us with evidence that the jury did not follow the court's instructions.

The judgment is affirmed.

In this opinion the other judges concurred.