STATE OF CONNECTICUT *v.* KERRY J. PULASKI
(AC 21003)

Mihalakos, Flynn and Peters, Js.

498

Argued April 23—officially released August 13, 2002

*Gilbert Shasha*, for the appellant (defendant).

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *Kevin T. Kane*, state's attorney, and *Sarah E. Steere*, assistant state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, Kerry J. Pulaski, appeals from the judgment of conviction, rendered after a jury trial, of operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes (Rev. to 1997) § 14-227a (a).[1] On appeal, the

---

[1] General Statutes (Rev. to 1997) § 14-227a (a) provides in relevant part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if he operates a motor vehicle on a public highway of this state . . . (1) while under the influence of intoxicating liquor or any

defendant claims that (1) there was insufficient evidence to prove under count one of the substitute information that he was operating while under the influence of intoxicating liquor,[2] (2) the trial court improperly denied his motion for a judgment of acquittal on the second count of the substitute information[3] and (3) there is a disparity in sentencing between those defendants who exercise their constitutional rights to a jury trial and those who plead guilty.[4] We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On September 26, 1998, Trooper Stowall Burnham of the Connecticut state police was traveling northbound on Interstate 95 in East Lyme. At approximately 2 a.m., he observed a vehicle ahead of him moving at a high rate of speed. The posted speed limit was fifty-five miles per hour. Burnham followed the vehicle and gauged its speed to be between seventy-six and seventy-eight miles per hour.

At approximately 2:09 a.m., Burnham stopped the vehicle, approached it on the driver's side, and asked its operator, the defendant, for his license and registration.

drug or both or (2) while the ratio of alcohol in the blood of such person is ten-hundredths of one per cent or more of alcohol, by weight."

[2] Count one alleged that the defendant had operated a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes (Rev. to 1997) § 14-227a (a) (1).

[3] Count two alleged that the defendant had operated a motor vehicle while the ratio of alcohol in his blood was 0.10 percent or more of alcohol by weight in violation of General Statutes (Rev. to 1997) § 14-227a (a) (2).

[4] The defendant has not presented this court with legal authority or analysis to support his third claim. "We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . We will not review claims absent law and analysis." (Citation omitted; internal quotation marks omitted.) *State* v. *Jones,* 67 Conn. App. 25, 27 n.2, 787 A.2d 43 (2001). Because the defendant's brief is inadequate, we deem his third claim abandoned and, therefore, decline to review it.

After noticing a strong odor of alcohol emanating from the defendant, Burnham asked him to recite the alphabet so as to discern his physical and mental functioning. The defendant slurred his pronunciation and stopped reciting the alphabet at the letter "P." The defendant was then asked to exit his vehicle and to perform various field sobriety tests,[5] including a walk and turn test and a one-legged stand test. After the defendant failed those tests, at approximately 2:23 a.m., he was arrested and charged with speeding and with operating a motor vehicle while under the influence of intoxicating liquor.

The defendant was transported to the state police barracks. At the barracks, the defendant indicated that he had two beers at a tavern between 11:30 p.m. and 1:45 a.m., he weighed 205 pounds, had taken a prescription antibiotic called zithromax the previous afternoon and had last eaten at 1:15 p.m. the previous day. At approximately 2:46 a.m., the defendant submitted to a breath test with an intoxilizer alcohol analyzer (intoxilizer),[6] and his blood alcohol content (BAC) registered at 0.244 percent. A second test was administered at approximately 3:24 a.m., and it registered a BAC of 0.239 percent. Thereafter, in a substitute information, the defendant was charged with (1) operating a motor vehicle while under the influence of intoxicating liquor and (2) operating a motor vehicle while the ratio of alcohol in his blood was 0.10 percent or more of alcohol by weight.

On June 19, 2000, the jury returned a verdict of guilty on both counts of the substitute information, which the

---

[5] Prior to administering the field sobriety tests, Burnham asked the defendant if he had any physical problems that might impact the tests and whether he was taking any medication. The defendant explained that he had screws in his left ankle and that he was taking zithromax. Zithromax is a prescription antibiotic.

[6] The intoxilizer had been certified by the department of public health as being in good working order. Burnham, trained and certified as a breath analysis instrument operator, administered the defendant's breath test.

court accepted. On June 29, 2000,[7] the court imposed a fine on the defendant and sentenced him to confinement in a community correctional institution for a total of six months, execution suspended after forty-five days, with two years probation on count one of the substitute information. This appeal followed. Additional facts will be set forth as necessary.

The defendant's first claim on appeal is that the evidence adduced at trial regarding his inability to operate a motor vehicle was insufficient to support count one of the substitute information. Specifically, he argues that the cumulative force of the evidence was insufficient to establish that he operated his motor vehicle while under the influence of intoxicating liquor in violation of § 14-227a (a) (1).[8] We disagree.

The defendant concedes that his claim is unpreserved and seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[9] In *State* v. *Trotter*, 69 Conn. App. 1, 793 A.2d 1172, cert. denied, 260 Conn. 932, 799 A.2d 297 (2002), we recognized that "any defendant found guilty on the basis of insufficient evidence has been deprived of a constitutional right, and would therefore necessarily meet the four prongs of *Golding*." (Internal quotation marks omitted.) Id., 5, quoting *State* v. *Adams*, 225 Conn. 270, 275–76 n.3, 623 A.2d 42 (1993);

---

[7] Additionally, on June 29, 2000, the defendant pleaded guilty to a part B information dated October 29, 1998, which charged the him with being a repeat offender in that he previously had committed the offense of operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a.

[8] See footnote 1.

[9] In *Golding*, our Supreme Court held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

*State* v. *Hicks*, 56 Conn. App. 384, 386–87, 743 A.2d 640 (2000). Thus, as in *Trotter*, we review the defendant's claim as if it had been properly preserved. See *State* v. *Trotter*, supra, 5.

"When reviewing sufficiency of the evidence claims, we impose a two part analysis. First, we construe the evidence in the light most favorable to sustaining the verdict. . . . Second, we determine whether, from that evidence and all reasonable inferences that it yields, a trier of fact could reasonably have concluded that the defendant was guilty beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Teti*, 50 Conn. App. 34, 38, 716 A.2d 931, cert. denied, 247 Conn. 921, 722 A.2d 812 (1998). "[I]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence. The rule is that the jury's function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Sivri*, 231 Conn. 115, 132–33, 646 A.2d 169 (1994). Accordingly, we inquire "whether there is a reasonable view of the evidence that supports the jury's verdict of guilty"; id., 134; and not "whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence." Id.

Furthermore, we note that "[t]here is no distinction between direct and circumstantial evidence [so] far as probative force is concerned. . . . In fact, circumstantial evidence may be more certain, satisfying and persuasive than direct evidence. . . . If evidence, whether direct or circumstantial, should convince a jury beyond a reasonable doubt that an accused is guilty, that is all that is required for a conviction." (Citations omitted; internal quotation marks omitted.) *State* v. *Teti*, supra, 50 Conn. App. 39.

"Driving while under the influence of liquor means, under the law of Connecticut, that a driver had become so affected in his mental, physical or nervous processes that he lacked to an appreciable degree the ability to function properly in relation to the operation of his vehicle. *State* v. *Tryon*, 145 Conn. 304, 307, 142 A.2d 54 [1958]; *State* v. *Andrews*, 108 Conn. 209, 216, 142 A. 840 [1928]." *Infeld* v. *Sullivan*, 151 Conn. 506, 509, 199 A.2d 693 (1964); see also *State* v. *Gonzalez*, 14 Conn. App. 216, 234, 541 A.2d 115 (1988), aff'd, 210 Conn. 446, 556 A.2d 137 (1989).

The following additional facts are relevant to the resolution of the defendant's claim. At trial, Burnham testified that between 2:09 a.m. and 2:23 a.m., the time that he stopped the defendant's vehicle and the time of the defendant's arrest, respectively, the defendant failed various sobriety tests that included a walk and turn test and a one-legged stand test. Specifically, on the walk and turn test, the defendant raised his arms, stopped to steady himself, stepped off of a straight line and failed to walk heel to toe.[10] The defendant could not complete the one-legged stand test for the requisite thirty seconds without putting his foot down three times before the count of six.[11] The defendant continued to slur his speech during these tests. Furthermore, as previously discussed, the defendant failed to recite the

[10] Burnham testified that the walk and turn test requires a person to put one foot in front of the other with his hands down by his sides, while walking heel to toe, which he described as walking with no more than one half of an inch between heel and toe. The person must count out loud and take nine such steps, and then pivot around and take the same type of steps in the opposite direction.

[11] Burnham testified that for the one-legged stand test, a person is asked to put his hands by his sides, keep his feet together, then raise one leg six inches off of the ground while keeping his toes pointed. While doing so, the person begins counting to thirty, beginning with one thousand and one, then one thousand and two, one thousand and three, and so on. Burnham testified that because the defendant had screws in his left foot, the defendant was given the choice of which foot to raise.

alphabet beyond the letter "P." After observing the defendant's behavior and combined performance on these tests, Burnham concluded that the defendant was under the influence of alcohol and arrested him.

Additionally, Joel Milzoff, a toxicologist and manager of the state health department's toxicology laboratory who was trained in the study of the effects of alcohol on the body, testified that alcohol acts as a depressant on the central nervous system, slowing its reactions. He asserted that alcohol decreases visual acuity and depresses or impairs one's ability to operate machinery. Milzoff opined that the central nervous system of an intoxicated person would be significantly depressed or impaired, and such person's ability to respond to situations would also be significantly depressed.

The jury was presented with evidence regarding the defendant's behavior and inadequate functioning during a series of field sobriety tests, and an expert's testimony that an intoxicated person would have a depressed central nervous system and an impaired ability to operate machinery. Construing the evidence in the light most favorable to sustaining the verdict, we conclude that the jury could reasonably have concluded that the cumulative force of the evidence was sufficient to establish that the defendant had operated a motor vehicle while under the influence of intoxicating liquor. Accordingly, we reject the defendant's claim.

We are not persuaded by the defendant's argument that the evidence at trial was insufficient to show that he operated his motor vehicle in a manner consistent with that of an intoxicated driver. In this case, there was direct evidence from Burnham that the defendant operated a motor vehicle, and it was reasonable for the jury to infer, from the defendant's failure of a series of field sobriety tests, that his ability to operate his vehicle was substantially impaired.

We are similarly not persuaded by the defendant's argument that the evidence was insufficient to show that his conduct after being stopped by police was consistent with that of an intoxicated driver. The defendant focuses on testimony indicating that he had no difficulty providing his license and registration to Burnham, he understood and followed field test instructions and was able to identify and spell the name of the medication he had taken, zithromax. As previously discussed, however, "[i]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence. The rule is that the jury's function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Sivri,* supra, 231 Conn. 132–33. Accordingly, we conclude that there is a reasonable view of the evidence that supports the jury's verdict of guilty.

As a final matter, the defendant also claims that the court improperly denied his motion for a judgment of acquittal on the second count of the substitute information at the close of the prosecution's case-in-chief.[12] Specifically, he argues that the state failed to present evidence from which a jury could conclude beyond a reasonable doubt that the alcohol content in his blood was 0.10 percent or more *by weight,*[13] within the meaning of § 14-227a (a) (2). Because sufficient evidence was presented to demonstrate that the defendant had operated a motor vehicle while under the influence of intoxicating liquor in violation of § 14-227a (a) (1), we

[12] Practice Book §§ 42-40 and 42-41 permit motions for judgments of acquittal to be made at the close of the prosecution's case-in-chief.

[13] The defendant argued, both at trial when seeking a judgment of acquittal and on appeal, that the state failed to present any evidence to show that the results of his breath tests expressed the amount of alcohol in his blood by weight, rather than by volume or some other factor.

need not address the defendant's second claim on appeal.

The judgment is affirmed.

In this opinion the other judges concurred.