## STATE OF CONNECTICUT *v.* ROY TROTTER
## (AC 20886)

Lavery, C. J., and Schaller and Flynn, Js.

Argued October 22, 2001—officially released April 9, 2002

*Alice Osedach-Powers*, assistant public defender, for the appellant (defendant).

*Richard F. Jacobson*, special assistant state's attorney, with whom was *Robert Brennan*, assistant state's attorney, for the appellee (state).

*Opinion*

LAVERY, C. J. The defendant, Roy Trotter, appeals from the judgment of conviction, rendered after a jury trial, of attempt to commit murder in violation of General Statutes §§ 53a-49 and 53a-54a (a), assault in the first degree in violation of General Statutes § 53a-59 (a) (5) and carrying a pistol without a permit in violation of General Statutes (Rev. to 1997) § 29-35 (a).[1]

On appeal, the defendant claims that contrary to the rule of *State* v. *Whelan*, 200 Conn. 743, 753, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed.

---

[1] Pursuant to the parties' stipulation, the court found that the defendant had violated General Statutes § 53-202k.

2d 598 (1986), the trial court improperly admitted into evidence (1) a statement that the victim had given on December 21, 1998, from his hospital bed, and (2) a statement that the victim had given on February 2, 1999, indicating that he had selected a photograph of the defendant from an array and identified him as his assailant. Regarding the victim's December 21, 1998, statement, the defendant claims, in the alternative, that the court improperly denied his motion to redact a section that he had asserted was highly prejudicial and of little probative value. Finally, the defendant claims that the state failed to prove beyond a reasonable doubt that he had been carrying a pistol that had a barrel less than twelve inches long and, therefore, he was improperly convicted of carrying a pistol without a permit. We affirm the judgment of the trial court.

On the basis of the evidence admitted during the defendant's trial, the jury reasonably could have found the following facts. On December 17, 1998, at approximately 1 p.m., the defendant drove to the home of Natasha Easter, located at 62 Ridge Avenue, Bridgeport, hoping to find her boyfriend, the victim, Juan Figueroa, who owed him $200 for drugs. Upon arriving at Easter's home, the defendant exited his vehicle, walked to the back door and knocked. After the defendant identified himself, Easter opened the door. The defendant asked for the victim, and Easter responded that he was at his home, which was located at 729 South Avenue, Bridgeport. The defendant did not believe her, and an argument ensued. Thereafter, the victim, who had been on the second floor of Easter's home, came downstairs. The defendant asked the victim to follow him outside. The victim obliged and followed the defendant into the alleyway behind Easter's home. After a brief discussion, the defendant drew a .45 caliber semiautomatic pistol and fired it five or six times at the victim, striking him in the chest, groin and buttocks. The defendant then

placed the pistol back into his coat pocket, returned to his vehicle and fled the scene. Thereafter, an ambulance transported the victim to Bridgeport Hospital. Emergency surgery was performed on the victim, who later recovered from his wounds.

On March 14, 2000, the jury returned a verdict of guilty as to each of the three counts that were before it, and the court accepted the verdict. On April 27, 2000, the court sentenced the defendant to a total effective term of thirty years imprisonment, and this appeal followed. Additional facts and procedural history will be presented as necessary.

## I

We first address the defendant's claim that the state failed to prove beyond a reasonable doubt that he had been carrying a pistol without a permit in violation of § 29-35 (a) because, if he prevails on that claim, he is entitled to an acquittal on that charge. See *State* v. *Murray*, 254 Conn. 472, 478, 757 A.2d 578 (2000). Specifically, the defendant claims that the evidence was insufficient to prove that he had been carrying a firearm that had a barrel less than twelve inches long and, therefore, the state failed to prove one of the elements of § 29-35 (a). The defendant concedes that this claim is unpreserved and seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[2] " 'Our Supreme Court, following the dictate of the United States Supreme Court in *Jackson* v. *Virginia*, 443 U.S. 307,

_____

[2] In *Golding*, our Supreme Court held that: "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), has held that "any defendant found guilty on the basis of insufficient evidence has been deprived of a constitutional right, and would therefore necessarily meet the four prongs of *Golding*." *State* v. *Adams*, 225 Conn. 270, 275–76 n.3, 623 A.2d 42 (1993).' " *State* v. *Hicks*, 56 Conn. App. 384, 386–87, 743 A.2d 640 (2000), quoting *State* v. *Patterson*, 35 Conn. App. 405, 411 n.7, 646 A.2d 258, cert. denied, 231 Conn. 930, 649 A.2d 254 (1994). Accordingly, we conclude that no practical reason exists to engage in a *Golding* analysis of a sufficiency of the evidence claim and, thus, review the challenge as we do any other properly preserved claim. See *State* v. *Hicks*, supra, 387.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Citation omitted; internal quotation marks omitted.) *State* v. *Torres*, 242 Conn. 485, 489, 698 A.2d 898 (1997).

Section 29-35 (a) provides in relevant part: "No person shall carry any pistol or revolver upon his person, except when such person is within his dwelling house or place of business, without a permit to carry the same issued as provided in section 29-28. . . ." The terms "pistol" and "revolver" are defined as "any firearm having a barrel less than twelve inches in length." General

Statutes § 29-27.[3] Consequently, the defendant can properly be found guilty of violating § 29-35 (a) only if the state proves beyond a reasonable doubt that he was carrying a firearm that had a barrel that was less than twelve inches long. See *State* v. *Perry*, 48 Conn. App. 193, 196, 709 A.2d 564, cert. denied, 244 Conn. 931, 711 A.2d 729 (1998). We recognize, however, that direct numerical evidence of barrel length is not required to obtain a proper conviction under § 29-35 (a). See *State* v. *Williams*, 231 Conn. 235, 251–52, 645 A.2d 999 (1994).

In the present case, the firearm that the defendant allegedly had used to shoot the victim was not offered at trial. Nonetheless, the court admitted into evidence testimony, as well as exhibits, concerning barrel length that had substantial probative value. Detective William Mayer of the Bridgeport police department testified that he had been dispatched to the scene of the shooting. Mayer testified that shortly after his arrival at the scene, he took custody of eight spent .45 caliber shell casings that had been recovered by fellow detectives. Additionally, Mayer testified that a "shell casing" is the "part of a bullet which stores gunpowder and ejects from a semiautomatic weapon when it's fired." The court admitted all eight shell casings into evidence.

Louis Cortello, another detective in the Bridgeport police department, testified that on the day following the shooting, he visited Bridgeport Hospital, where the victim was being treated, and recovered a .45 caliber spent bullet. The court admitted that spent bullet (state's exhibit sixty-one) into evidence.

Marshall Robinson, a forensic ballistics expert, testified that he had examined the eight spent shell casings that had been recovered from the scene. Robinson testi-

---

[3] General Statutes § 29-27 provides: "The term 'pistol' and the term 'revolver', as used in sections 29-28 to 29-38, inclusive, mean any firearm having a barrel less than twelve inches in length."

fied that all eight were ".45 auto cartridge cases" and that he had concluded, on the basis of their breachface marks,[4] that all had been fired from the same firearm. More importantly, Robinson testified that he had examined state's exhibit sixty-one and concluded, on the basis of its rifling characteristics,[5] that the barrel length of the firearm used to fire it could have been as long as eight inches but could not have been as long as twelve inches. Robinson's testimony was uncontroverted.

Additionally, the court admitted, for substantive purposes, a statement under *State* v. *Whelan,* supra, 200 Conn. 753, that had been given by Easter on the day of the shooting. In that statement, Easter stated that she had observed the defendant leaving the scene and that she "saw [the defendant] holding the handle of a gun" as "[h]e was putting it back into his coat pocket after the shooting." Finally, the victim, himself, testified that the gun that had been fired at him was about eight inches long.

When viewed in the light most favorable to sustaining the verdict, the foregoing evidence establishes that the defendant wielded a .45 caliber firearm that had a barrel length of approximately eight inches. From those factual findings, it is reasonable to infer that the defendant was carrying a firearm that had a barrel less than twelve inches long. Accordingly, the jury reasonably could have concluded that the cumulative force of the evidence established beyond a reasonable doubt that the firearm that the defendant had wielded had a barrel

---

[4] Robinson testified that "breachface marks" are "marks that are put on the back of the cartridge case at the time that it's fired" and that such marks "are individual only to the gun in which the cartridge cases were fired."

[5] Robinson testified as follows: "As the bullet passes down the barrel of the firearm, it receives a negative impression of the rifling that's inside the gun barrel. . . . Rifling is in a gun barrel to impart a spin on the bullet to keep it stable in flight."

less than twelve inches long. Thus, the defendant cannot prevail on his claim.

II

Next, the defendant claims that the court violated the rule of *State* v. *Whelan,* supra, 200 Conn. 753, in admitting into evidence a statement that the victim had given to police on December 21, 1998, from his hospital bed. The defendant challenges the court's ruling on two grounds: (1) the victim lacked personal knowledge of the facts set forth in his statement and, therefore, it failed to satisfy one of the requirements for admission under *Whelan*; and (2) the statement was otherwise too unreliable to be admitted under *Whelan* because (a) the victim had used heroin on the day he was shot, thus impairing his perception of the shooting, and (b) when the victim gave the statement, his cognition had been severely impaired by medications and the pain from his wounds. Alternatively, the defendant claims that the court improperly denied his motion to redact a section of that statement, which he had asserted was highly prejudicial and of little probative value. Additionally, should we conclude that the defendant failed to preserve any of those claims, he requests that we reverse the judgment under the plain error doctrine. We reject the defendant's claims.

The following additional facts and procedural history are relevant to our resolution of the defendant's claims. During the trial, the court held a *Whelan* hearing outside the presence of the jury to determine whether it should permit the state to introduce into evidence the victim's December 21, 1998 statement as a prior inconsistent statement. At that hearing, the court heard the state's offer of proof, which indicated the following. Four days after the shooting, on December 21, 1998, Dwayne McBride and Ricardo Vargas, detectives in the Bridgeport police department, interviewed the victim in

Bridgeport Hospital. McBride asked the victim several questions concerning the shooting. Throughout the interview, the victim was crying and very scared, but coherent. He implicated the defendant in the shooting, explaining that he had owed the defendant $200 for drugs and that the defendant had shot him six times.

The interview was recorded, and from that recording, McBride had his secretary produce a transcript. McBride then listened to the tape and read the transcript to ensure its accuracy. On February 2, 1999, McBride met with the victim, who then reviewed and signed all eight transcript pages.

At trial, the victim testified that he could not recall the events of December 17, 1998. The state sought to introduce the victim's allegedly inconsistent December 21, 1998 statement for substantive purposes pursuant to *Whelan*. At the conclusion of the state's offer of proof, the defendant objected, arguing that the statement was inadmissible under *Whelan* because (1) the victim, i.e., the declarant, had been medicated and hospitalized at the time of the interview, (2) the transcript of the interview had been produced by a person who was not present during the interview, (3) the victim had not sworn that the answers he had given during the interview were truthful and (4) the victim had not signed the transcript until six weeks after the interview. The court, after considering those objections, admitted into evidence the recording and the transcript. In so doing, it stated that the defendant's objections actually go to the weight, not the admissibility, of the December 21, 1998 statement.

A

The following legal principles govern our consideration of the defendant's claim that the statement was improperly admitted under *Whelan*. Section 8-5 (1) of the Connecticut Code of Evidence incorporates the rule

of *State* v. *Whelan,* supra, 200 Conn. 753, and implicitly incorporates the developments and clarifications of the *Whelan* rule that have occurred since *Whelan* was decided. See Conn. Code Evid. § 8-5 commentary. Section 8-5 provides in relevant part: "The following are not excluded by the hearsay rule, provided the declarant is available for cross-examination at trial: (1) Prior inconsistent statement. A prior inconsistent statement of a witness, provided (A) the statement is in writing, (B) the statement is signed by the witness, and (C) the witness has personal knowledge of the contents of the statement. . . ." Id., § 8-5. "[O]nce the proponent of a prior inconsistent statement has established that the statement satisfies the requirements of *Whelan,* that statement, like statements satisfying the requirements of other hearsay exceptions, is presumptively admissible." *State* v. *Mukhtaar,* 253 Conn. 280, 306, 750 A.2d 1059 (2000). "The admissibility . . . of a prior inconsistent statement pursuant to *Whelan,* is a matter within the wide discretion of the trial court. . . . On appeal, the exercise of that discretion will not be disturbed except on a showing that it has been abused." (Citation omitted.) *State* v. *Newsome,* 238 Conn. 588, 596, 682 A.2d 972 (1996).

## 1

We turn first to the defendant's claim that the victim lacked personal knowledge of the facts set forth in his statement. The record discloses that the defendant, during trial, did not object on that basis to the admission of the statement. "Appellate review of evidentiary rulings is ordinarily limited to the specific legal issue raised by the objection of trial counsel." *State* v. *Christiano,* 228 Conn. 456, 464, 637 A.2d 382, cert. denied, 513 U.S. 821, 115 S. Ct. 83, 130 L. Ed. 2d 36 (1994). In other words, "[o]nce an objection has been made and the grounds stated, a party is normally limited on appeal to raising the same objection on the same basis as stated

at trial." *State* v. *Adams*, 225 Conn. 270, 287 n.12, 623 A.2d 42 (1993).[6] Because the defendant, in his objection to the victim's statement, did not argue that the victim lacked personal knowledge, that objection cannot serve as a conduit for our review of the defendant's claim. See *State* v. *Christiano*, supra, 464; *State* v. *Adams*, supra, 287 n.12; see also *State* v. *Newsome*, supra, 238 Conn. 597 (denying review of defendant's claim, raised for first time on appeal, that *Whelan* statement had not satisfied personal knowledge requirement).

We now consider the defendant's alternative claim that the admission of the victim's statement under *Whelan* constituted plain error because the victim did not have personal knowledge of the facts set forth therein.

"[T]he plain error doctrine, which is now codified at Practice Book § 60-5, provides in relevant part: 'The court may reverse or modify the decision of the trial court if it determines that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that the decision is otherwise erroneous in law. . . . The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . .' This is not, however, a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy." *State* v. *Cobb*, 251 Conn. 285, 343 n.34, 743 A.2d 1 (1999), cert. denied, 531 U.S. 841, 121 S. Ct. 106, 148 L. Ed. 2d 64 (2000).

---

[6] "The purpose of requiring trial counsel to object properly is not merely formal: it serves to alert the trial court to purported error while there is time to correct it without ordering a retrial." *State* v. *Christiano*, supra, 228 Conn. 464.

"Plain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice." (Citations omitted; internal quotation marks omitted.) *State* v. *Toccaline*, 258 Conn. 542, 552–53, 783 A.2d 450 (2001).

We conclude that the admission of the victim's statement under *Whelan* did not constitute an error so obvious that it affected the fairness and integrity of, and public confidence in, the judicial proceeding. Moreover, the defendant has failed to demonstrate that manifest injustice will result if we decline to reverse the judgment. Accordingly, we conclude that the admission of that statement was not plain error.

2

The defendant also contends that the statement was otherwise too unreliable to be admitted because (1) the victim had used heroin on the day he was shot, thus impairing his perception of the shooting,[7] and (2) when the victim gave the statement, his cognition had been severely impaired by medications and the pain from his wounds.

We recognize that "a prior inconsistent statement that fulfills the *Whelan* requirements may have been made under circumstances so unduly coercive or extreme as to grievously undermine the reliability generally inherent in such a statement, so as to render it, in effect, not that of the witness." *State* v. *Mukhtaar*, supra, 253 Conn. 306. "In such circumstances, the trial

[7] We assume arguendo that the defendant properly preserved that aspect of his claim.

court must act as a gatekeeper to ensure that the statement does not go to the jury for substantive purposes. We emphasize, however, that the linchpin of admissibility is reliability: the statement may be excluded as substantive evidence only if the trial court is persuaded, in light of the circumstances under which the statement was made, that the statement is so untrustworthy that its admission into evidence would subvert the fairness of the fact-finding process. In the absence of such a showing by the party seeking to exclude a statement that meets the *Whelan* criteria, the statement is admissible as substantive evidence; like all other evidence, its credibility is grist for the cross-examination mill. Thus, because the requirements that [our Supreme Court] established in *Whelan* provide a significant assurance of reliability, it will be the highly unusual case in which a statement that meets the *Whelan* requirements nevertheless must be kept from the jury." Id., 306–307. "The ultimate question for the trial court, therefore, [was] whether, notwithstanding the statement's satisfaction of the *Whelan* requirements, the circumstances under which the statement was made nonetheless render it so unreliable that a jury should not be permitted to consider it for substantive purposes." Id., 307 n.27.

In the present case, the defendant has failed to convince us that the victim's statement was so untrustworthy that its admission into evidence subverted the fairness of the fact-finding process. Our review of the record discloses that the statement was not given under circumstances so unduly coercive or extreme that it, in effect, was not the victim's. The factors advanced on appeal by the defendant go to the weight of the statement, not its admissibility, and were relevant and proper matters for cross-examination. Thus, the court did not abuse its discretion in concluding that the statement was not too unreliable to be admitted into evi-

dence. Accordingly, we conclude that the court properly admitted the statement into evidence.

## B

The defendant claims, in the alternative, that the court improperly denied his motion to redact a section of the victim's statement. Specifically, he asserts that either (1) the challenged section was irrelevant or (2) the probative value of that section was outweighed by the danger of unfair prejudice. We agree with the latter assertion but conclude that the court's impropriety was harmless.

The following additional facts are relevant to our resolution of the defendant's claim. On December 21, 1998, shortly before concluding his interview of the victim, McBride asked him the following question and received the following answer.

[Detective McBride:] Juan [the victim], is there anything else that you want to add to this statement?

[Victim:] Yes, I hope that when you do catch [the defendant], you put him in jail for a long time, 'cuz they ain't, they ain't worth nothing. They just a bunch of lowlifes. They just be beating up defenseless people, you know, drug addicts and everything. That's not right. You know? Hope they get their time in court."

During the trial, the defendant requested that the court redact that question and answer from the victim's statement. He argued that that section was irrelevant and highly prejudicial. The court denied the request, concluding that that section evidenced the victim's fear of the defendant and, hence, served to explain why the victim's in-court testimony was inconsistent with his prior statements to the police.

The legal principles that govern our consideration of the defendant's claim are as follows. "All relevant

evidence is admissible, except as otherwise provided by the constitution of the United States, the constitution of this state, the Code or the General Statutes. Evidence that is not relevant is inadmissible." Conn. Code Evid. § 4-2. "Relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice or surprise, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." Id., § 4-3. "The task of striking this balance is relegated to the court's discretion." Id., § 4-3 commentary; see also *State* v. *Booth*, 250 Conn. 611, 645, 737 A.2d 404 (1999) (" '[i]t is well established that [t]he trial court has broad discretion in ruling on the admissibility [and relevancy] of evidence' "), cert. denied sub nom. *Brown* v. *Connecticut*, 529 U.S. 1060, 120 S. Ct. 1568, 146 L. Ed. 2d 471 (2000). "For exclusion . . . the prejudice must be unfair in the sense that it unduly arouse[s] the jury's emotions of prejudice, hostility or sympathy . . . or tends to have some adverse effect upon [the party against whom the evidence is offered] beyond tending to prove the fact or issue that justified its admission into evidence." (Citation omitted; internal quotation marks omitted.) Conn. Code Evid. § 4-3 commentary.

If we assume arguendo that the section at issue was relevant, we must consider whether its probative value was outweighed by the danger of unfair prejudice to the defendant. In that section of the statement, the victim indicated that the defendant and his associates routinely had beaten defenseless people, including drug addicts. He also indicated that the defendant and his associates were worthless and "lowlifes," and that the defendant deserved a lengthy jail sentence. Considering that that section contained only the victim's negative opinion of the defendant and the victim's assertion that the defendant generally participated in beatings, its probative force was insignificant given the specificity of

the charges that the state had brought against the defendant. In addition to the danger of arousing in the jury feelings of hostility toward the defendant, that section tended to prove that the defendant had committed crimes beyond those at issue at his trial. On balance, its probative value certainly was minimal and clearly was outweighed by the danger of unfair prejudice to the defendant. We conclude that the court abused its discretion in denying the defendant's motion to redact that section.

Nonetheless, "[u]nder the current and long-standing state of the law in Connecticut, the burden to prove the harmfulness of an improper evidentiary ruling is borne by the defendant. The defendant must show that it is more probable than not that the erroneous action of the court affected the result." (Internal quotation marks omitted.) *State* v. *Booth*, supra, 250 Conn. 638. In the present case, the court admitted into evidence Easter's *Whelan* statement and Robinson's expert testimony interpreting the evidence that the police had recovered from the scene, as well as both of the victim's *Whelan* statements. In her statement, Easter stated that the defendant had visited her home, found the victim there and walked with the victim out of her home to the alleyway behind it. Moments later, Easter heard gunshots and observed the defendant placing a handgun into his coat pocket as he was leaving the scene. Additionally, the victim, in both of his *Whelan* statements, clearly implicated the defendant as the shooter. Easter's testimony and the victim's testimony, in conjunction with Robinson's compelling expert testimony, leads us to conclude that the defendant has failed to satisfy his burden of proving that it was more probable than not that the court's impropriety affected the result. Therefore, we reject the defendant's claim.

III

Finally, the defendant claims that the court violated the rule of *State* v. *Whelan*, supra, 200 Conn. 753, in

admitting into evidence a statement that the victim had given on February 2, 1999, indicating that he had identified the defendant as the shooter and selected a photograph of him from an array. Specifically, the defendant asserts that the court abused its discretion in finding that the victim's testimony was inconsistent with his February 2, 1999 statement and, therefore, improperly admitted that statement under *Whelan*.[8] We reject the defendant's claim.

The following additional facts and procedural history are relevant. During the trial, the state called the victim as its first witness. The following colloquy occurred during the state's direct examination of him:

"[Prosecutor:] I'd like to go back to December 17th between 12:30 and 1:00 in 1998. Do you recall that day?

"[Victim:] No, I don't.

"[Prosecutor:] You don't recall it?

"[Victim:] No.

"[Prosecutor:] Do you recall getting shot that day?

"[Victim:] I don't remember that day at all.

"[Prosecutor:] You don't remember anything that day?

"[Victim:] No, I don't.

\* \* \*

"[Prosecutor:] On February 2, do you recall giving another statement to Detective McBride? I'm gonna

---

[8] Additionally, the defendant, in his brief, cursorily claims that the victim's February 2, 1999 statement was inadmissible under *Whelan* because the victim's "identification of him was inherently unreliable for the same reasons that the December 21, 1998 statement was as discussed above." In part II A 2, we conclude that the court did not abuse its discretion in concluding that the December 21, 1998 statement was not too unreliable to be admitted into evidence. For that reason, the defendant's identical claim concerning the February 2, 1999 statement no longer is viable.

show you this statement here identifying the person who shot you.

"[Victim:] Yes.

"[Prosecutor:] Okay. You do recall identifying the person that shot you on [February] 2nd?

"[Victim:] From what I was told, yes.

"[Prosecutor:] No, no, I'm asking you.

"[Victim:] Yes.

"[Prosecutor:] And did you, in fact, identify to the police who it was that shot you?

"[Victim:] Yes.

"[Prosecutor:] And who was that?

"[Victim:] Nez [the defendant's street name]."

During the state's redirect examination of the victim, the following colloquy occurred:

"[Prosecutor:] And on the second of February, then, when you identified the defendant as the shooter under oath again, was that a lie also?

"[Victim:] Yes, it was."

Thereafter, the court held a *Whelan* hearing outside the presence of the jury to determine whether it should permit the state to introduce into evidence the victim's February 2, 1999 statement. At that hearing, the court heard the state's offer of proof, which was as follows. On February 2, 1999, the victim visited McBride at the Bridgeport police department. During the visit, the victim implicated the defendant, selected a photograph of him from an array of eight photographs, and McBride interviewed him regarding his selection. That interview

was transcribed, and the victim reviewed the transcript and signed all three of its pages.[9]

At the conclusion of the offer of proof, the state requested that the court admit the transcript (the statement). The defendant objected, arguing that the statement was consistent with the victim's testimony and, thus, was not admissible pursuant to the *Whelan* rule. The court admitted the statement into evidence. In so doing, it found that there were "substantive inconsistencies" between the victim's statement and his testimony.

As indicated previously in this opinion, § 8-5 (1) of the Connecticut Code of Evidence incorporates the rule

---

[9] The transcript of McBride's February 2, 1999 interview in relevant part was as follows:

"[Q:] What is your education level?

"[A:] Ninth grade. . . .

"[Q:] What do you have to tell me?

"[A:] I'm here to look at a picture.

"[Q:] Do you remember the date [on] which you were shot?

"[A:] Yes, the 17th of December.

"[Q:] Do you remember who you were with right before being shot?

"[A:] Yes, I left out the door of my house with the one who shot me, Nez [the defendant's street name].

"[Q:] Do you know Nez's real name?

"[A:] No, I don't.

"[Q:] Can you describe Nez?

"[A:] A little shorter than me, skinny, bulging eyes and big teeth, black guy.

"[Q:] I'm going to show you a photo array consisting of eight males; tell me if you recognize any of them?

"[A:] Yes, number seven.

"[Q:] Who's number seven?

"[A:] Nez, the guy that shot me.

"[Q:] Are you certain this is the person you know as Nez?

"[A:] Yes.

"[Q:] Could you circle, date and initial the picture you have selected?

"[A:] Yes. Photo is that of [the defendant] 07/15/81, provided by the Waterbury P.D. and issued P.D.# 199800745)

"[Q:] Do you have anything else to add to this statement?

"[A:] No.

"[Q:] After reading this statement and finding it to be as you have stated, will you sign it?

"[A:] Yes."

of *State* v. *Whelan*, supra, 200 Conn. 753, and implicitly incorporates the developments and clarifications of the *Whelan* rule that have occurred since *Whelan* was decided. Conn. Code Evid. § 8-5 commentary.

"Inconsistencies may be shown not only by contradictory statements but also by omissions. In determining whether an inconsistency exists, the testimony of a witness as a whole, or the whole impression or effect of what has been said, must be examined. . . . Inconsistency in effect, rather than contradiction in express terms, is the test for admitting a witness' prior statement . . . and the same principle governs the case of the forgetful witness. . . . A statement's inconsistency may be determined from the circumstances and is not limited to cases in which diametrically opposed assertions have been made. Thus, inconsistencies may be found in changes in position and they may also be found in denial of recollection. . . . The trial court has considerable discretion to determine whether evasive answers are inconsistent with prior statements." (Citations omitted; internal quotation marks omitted.) *State* v. *Whelan*, supra, 200 Conn. 748–49 n.4.

In the present case, the defendant, on direct examination by the state, testified that he did not remember anything that had happened on December 17, 1998, the day he was shot. In response to further questioning on direct examination by the state, he testified, however, that he had met with McBride on February 2, 1999, and told him that the defendant had been the shooter. Nevertheless, the victim, while testifying on redirect examination by the state, recanted the statement he had given in the presence of McBride during their meeting on February 2, 1999. That statement disclosed that the victim had been able to recall some of the events concerning the shooting, including the identity of the shooter. See footnote 9. During the trial, the victim never testified that he *actually remembered* that the

defendant had been the shooter. Because inconsistencies may be found in changes in position and in the denial of recollection; id.; we conclude that the court did not abuse its discretion in finding that the victim's testimony was inconsistent with his February 9, 1999 statement. Accordingly, we reject the defendant's claim.

The judgment is affirmed.

In this opinion the other judges concurred.