STATE OF CONNECTICUT *v.* TANAKA DAVIS
(AC 21738)

Foti, Spear and Hennessy, Js.

Argued April 24—officially released August 20, 2002

*Lisa J. Steele*, special public defender, for the appellant (defendant).

*Carolyn K. Longstreth*, senior assistant state's attorney, with whom were *Richard Rubino*, deputy assistant state's attorney, and, on the brief, *James E. Thomas*, state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Tanaka Davis, appeals from the judgment of conviction, rendered after a jury trial,

of burglary in the third degree in violation of General Statutes § 53a-103. The defendant claims that the court improperly admitted into evidence his written, uncorroborated statement containing confessions of uncharged misconduct that resulted in unfair prejudice to him. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant and the victim, Carl Neal, were acquainted with one another; Neal had caused some damage to the defendant's automobile prior to the events leading to the defendant's arrest and subsequent conviction. On February 15, 2000, Neal visited a friend, Beatrice Smith. He parked his 1986 Subaru across the street from her residence at 165 Westland Street in Hartford. While Neal was at Smith's second floor residence, the defendant broke the passenger side window of Neal's automobile and entered it on that side. Someone observed the defendant's actions and notified Mary Belcher, a first floor resident in Smith's building, that the defendant was in Neal's autombile. Belcher looked toward Neal's automobile and saw the defendant sitting in the passenger seat. In response, she went up to Smith's residence and reported to Neal what she had seen. Neal exited Smith's residence and descended to Belcher's residence so that he could view his automobile from her window. Neal then observed a man resembling the defendant sitting in the passenger seat of his automobile and saw that the window on the passenger side had been broken.

The defendant exited the vehicle and noticed a passerby and acquaintance, Frank Woods, whom he asked for a ride. Woods agreed and drove the defendant to Clark Street, where he exited Woods' vehicle. Woods later returned to Westland Street, after stopping at a liquor store, and noticed that Hartford police officers were at the scene; they had responded to a report of a man with a shotgun in the area. Officer Nathanial

Ortiz questioned Woods. Woods told Ortiz that he had given the defendant a ride to Clark Street earlier that day and that he had noticed the defendant carrying something that he thought was a gun wrapped in a jacket.

Ortiz contacted the defendant the next day, and he agreed to meet with Ortiz at the police station. When the defendant arrived, Ortiz read him his *Miranda*[1] rights. The defendant voluntarily waived those rights and provided Ortiz with a written statement.

The defendant related that he had threatened to "blast" Neal if he continued to refuse to pay him money for damaging his vehicle and that he had entered Neal's car with the intent to rob him. He also explained how he had put the "word out on the street" that he was robbing certain victims[2] with a makeshift replica of a shotgun that he had constructed from "a pipe, a piece of wood, a beeper, and electric tape [with] a towel wrapped around the end . . . ." This "contraption," as the defendant called it, looked like a sawed-off shotgun. The defendant further explained that, subsequent to breaking into Neal's automobile, Woods had given him a ride to Clark Street because he told Woods that he saw two Puerto Rican men there whom he wanted to rob. The robbery failed because after he pointed his makeshift replica of the shotgun at them and demanded that they give him their money, one of the men handed

---

[1] *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). The defendant does not claim that his confessions were involuntary, and he does not challenge the statement itself in any manner.

[2] The defendant explained that he was robbing drug dealers because they were unlikely to call the police. He gave some detail as to the robberies he already had committed. For instance, a week before his arrest, the defendant explained how he had robbed an "easy" victim named Cotton, and that four days before breaking into Neal's automobile, he had robbed Charles Carter, Jr., and his girlfriend of "two bundles of dope." He also described that on the same day that the charged offenses had occurred, he robbed Shaun Towns of "dummy bundles" of dope that he later left in Neal's car.

the defendant a dollar bill and challenged him to a gunfight. The defendant ran off while disassembling the contraption and scattering its component parts "so they could not be found."

Subsequently, the defendant was arrested for breaking into Neal's automobile and charged with one count of burglary in the third degree in violation of § 53a-103 (a) and one count of criminal attempt to commit robbery in the second degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-135 (a) (2). A jury convicted him of the burglary charge, but acquitted him of the robbery charge. The court sentenced the defendant to five years of incarceration followed by three years of probation. This appeal followed.

The defendant claims that the court improperly admitted into evidence his written statement containing confessions to uncharged crimes. Specifically, the defendant contends that the court's admission of the statement into evidence, which was to be considered only in regard to the robbery charge, was improper because it lacked any probative value and was uncorroborated by any other evidence, as is required by the corpus delicti rule.[3] Further, the defendant argues that the jury, regardless of the court's curative instruction that it should not consider such evidence in determining his guilt on the burglary charge, could not have divorced the evidence between the two charges because of its highly prejudicial nature.

---

[3] The rule states that "a *naked* extrajudicial confession of guilt by one accused of crime is not sufficient to sustain a conviction when unsupported by *any* corroborative evidence. . . . The confession cannot stand alone but must be accompanied by sufficient evidence of the corpus delicti." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Arnold*, 201 Conn. 276, 286, 514 A.2d 330 (1986). The rule "protect[s] accused persons against conviction of offenses that have not in fact occurred . . . ." (Internal quotation marks omitted.) *State* v. *Hafford*, 252 Conn. 274, 316, 746 A.2d 150, cert. denied, 531 U.S. 855, 121 S. Ct. 136, 148 L. Ed. 2d 89 (2000).

Before setting forth the legal principles that govern our review of this appeal, we point out that the defendant's claim regarding the admission of evidence in violation of the corpus delicti rule concerns a charge of which the defendant was acquitted. Because the jury acquitted the defendant on the charge of attempt to commit robbery in the second degree, we review only whether the court improperly admitted otherwise relevant and material[4] evidence to that charge resulting in a prejudicial spillover effect on the jury's determination of the defendant's guilt regarding the burglary charge.

Our standard of review is well established. "The admission of evidence of prior uncharged misconduct is a decision properly within the discretion of the trial court. . . . [E]very reasonable presumption should be given in favor of the trial court's ruling. . . . [T]he trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to

---

[4] Uncharged misconduct is generally inadmissible unless it falls within an exception to the general rule. See Conn. Code Evid. § 4-5. The court determined that the various parts of the challenged evidence properly fell within either one of two exceptions to the general rule: Intent or system of criminal activity. Further, as stated in his brief, the defendant "concede[d] that the trial court could have found that [the incidents of uncharged misconduct] were relevant to the robbery charge."

We note that the defendant's assertion that evidence of uncharged misconduct must satisfy the corpus delicti rule is misplaced because that rule applies to *charged* misconduct, not uncharged misconduct. See *State* v. *Hafford*, 252 Conn. 274, 315–16, 746 A.2d 150, cert. denied, 531 U.S. 855, 121 S. Ct. 136, 148 L. Ed. 2d 89 (2000); *Opper* v. *United States*, 348 U.S. 84, 93, 75 S. Ct. 158, 99 L. Ed. 101 (1954); *State* v. *Harris*, 215 Conn. 189, 193, 575 A.2d 223 (1990); *State* v. *Tillman*, 152 Conn. 15, 20, 202 A.2d 494 (1964); *State* v. *Doucette*, 147 Conn. 95, 99, 157 A.2d 487 (1959); *State* v. *LaLouche*, 116 Conn. 691, 694, 166 A. 252 (1933).

We note further that proof of an essential element of a crime may take many forms "such as proof of prior acts of misconduct. Such uncharged misconduct, even if a crime, need not be proved by the criminal standard. Any proof that is relevant, that is to say, any proof that has any tendency to make a finding of [an essential fact in the proof of guilt] more or less probable, is admissible." C. Tait, Connecticut Evidence (3d Ed. 2001) § 4.19.3, p. 234.

have been done. . . . The problem is . . . one of balancing the actual relevancy of the other crimes evidence in light of the issues and the other evidence available to the prosecution against the degree to which the jury will probably be roused by the evidence." (Internal quotation marks omitted.) *State* v. *Greene,* 69 Conn. App. 463, 467–68, 794 A.2d 1092, cert. denied, 260 Conn. 934, 802 A.2d 89 (2002).

"Relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice . . . ." Conn. Code Evid. § 4-3. "The task of striking this balance is relegated to the court's discretion." Id., commentary; see also *State* v. *Booth,* 250 Conn. 611, 645, 737 A.2d 404 (1999) (trial court has broad discretion in ruling on admissibility and relevancy of evidence), cert. denied sub nom. *Brown* v. *Connecticut,* 529 U.S. 1060, 120 S. Ct. 1568, 146 L. Ed. 2d 471 (2000). "For exclusion . . . the prejudice must be unfair in the sense that it unduly arouse[s] the jury's emotions of prejudice, hostility or sympathy . . . or tends to have some adverse effect upon [the party against whom the evidence is offered] beyond tending to prove the fact or issue that justified its admission into evidence. . . . Conn. Code Evid. § 4-3 commentary." (Internal quotation marks omitted.) *State* v. *Trotter,* 69 Conn. App. 1, 15, 793 A.2d 1172, cert. denied, 260 Conn. 932, 799 A.2d 297 (2002).

The defendant essentially claims that by admitting his written statement confessing to uncharged misconduct as evidence to support the robbery charge, the court abused its discretion because of the spillover effect that such evidence had on the jury in considering the defendant's guilt on the burglary charge. We are not persuaded.

The following additional facts are relevant to our resolution of the defendant's claim. Before admitting

the evidence of uncharged misconduct, the court heard argument from both counsel outside the presence of the jury[5] and engaged in a careful and deliberative process in evaluating the admissibility of the defendant's statement. Subsequently, the court redacted certain portions of the statement, but concluded that other portions of it were "extremely probative" as to the robbery charge. The court admitted those portions into evidence for the limited purpose of showing the defendant's intent and common scheme of criminal activity as to that charge. In determining whether the admitted portions of the defendant's statement were more prejudicial than probative, the court stated that "while [the evidence] is relevant, it is also very probative and, of course, is prejudicial." The court further stated that admitting the evidence "with a specific and cautionary instruction . . . [to] be considered only for . . . limited purposes [would reduce its prejudicial effect]. And we have no reason to believe that jurors cannot follow the court's instructions, namely, that the evidence is admitted not to show any bad character, not to show a propensity for committing crime, not to show that he committed a crime and should be punished for a crime or convicted of a crime for which he was not charged. With the limiting instruction, it would seem to me that the prejudice is substantially minimized."

The court gave detailed instructions to the jury on two separate occasions: Once before the statement was read into evidence and again during its charge to the jury before deliberation. Before the statement was read into evidence, the court commented: "[W]ith reference to the other events of uncharged misconduct, I am now

---

[5] The defendant did not file a motion in limine, but rather orally objected to the admission of his statement. The court treated the defendant's oral objection as a motion in limine and stated that a written transcript of its comments on the record, which the court would sign pursuant to the Practice Book § 64-1, would comprise the memorandum of decision in case of a conviction and appeal.

going to give you a limiting or a cautionary instruction regarding the very limited purpose for which you can consider that other information, the other events or the uncharged events. And, again, the first part of the limiting instruction, which I will repeat, is that that evidence is admitted solely with reference to . . . the attempted robbery count and is to be considered by you only with respect to [that count]." The court continued to give the jurors a detailed and thorough instruction regarding the limited purposes of the evidence before the statement was read to them.

During its charge to the jury, the court reiterated its cautionary charge and stated that "with reference to evidence of uncharged misconduct of the defendant, the evidence offered by the state of uncharged acts of misconduct of the defendant was . . . not admitted to prove or suggest any bad character of the defendant or any tendency or propensity to commit criminal acts. It was not admitted for that purpose. Rather, as you will recall from my cautionary instruction at the time of the admission of that evidence, it was admitted solely with respect to . . . the attempted robbery count and is to be considered by you only with respect to that count of the information. You will recall my limiting and cautionary instructions. . . . I emphasize that when evidence is admitted only for a limited purpose, you are duty bound by your juror's oath not to consider that evidence for any other purpose."

We conclude that the record clearly indicates that the court thoroughly balanced the probative value of the challenged evidence against its prejudicial effect before it was admitted. The court's precise and detailed limiting instructions safeguarded against the jury's potential misuse of the evidence and significantly minimized its prejudicial impact. See *State* v. *Kulmac*, 230 Conn. 43, 63, 644 A.2d 887 (1994). Moreover, the jury obviously discounted the prejudicial nature of the evi-

dence because it acquitted the defendant of the robbery charge. There is no reason to believe that the jury was persuaded by the evidence to convict the defendant on a count to which that evidence did not apply, i.e., burglary, but was not persuaded by the evidence to convict him on a count to which it did apply, i.e., robbery.

Here, the court's admission of the defendant's statement did not "unduly [arouse] the jury's emotions of prejudice, hostility or sympathy . . . or [tend] to have some adverse effect upon [the defendant] beyond tending to prove the fact or issue that justified its admission into evidence." (Internal quotation marks omitted.) *State* v. *Trotter*, supra, 69 Conn. App. 15. The court carefully and thoughtfully balanced the competing interests involved before admitting the evidence and, therefore, we cannot say that as a matter of law the trial court's decision to admit the evidence was an abuse of judicial discretion. See *State* v. *Braman*, 191 Conn. 670, 682, 469 A.2d 760 (1983). Accordingly, we conclude that the evidence was not unfairly prejudicial to the defendant regarding his conviction for burglary, and, therefore, his claim that the jury did not follow the court's limiting instructions must fail.[6]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] "Unless there is a clear indication to the contrary, a jury is presumed to follow the court's instructions." (Internal quotation marks omitted.) *State* v. *Dudley*, 68 Conn. App. 405, 412, 791 A.2d 661, cert. denied, 260 Conn. 916, 797 A.2d 515 (2002). No such indication exists in the record of this case that the jury did not adhere to the court's instructions.